UNITED STATES DISTRICT COURT
STERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,               Cr. No. 19-20080

v.                                         Hon. Judith E. Levy

WAYMON DAMON COSTNER,

               Defendant.
_____/

**REPLY BRIEF IN SUPPORT OF**
**MOTION FOR COMPASSIONATE RELEASE**

**Introduction**

Waymon Costner is imprisoned at FCI Elkton, one of the U.S. prisons that has experienced a severe outbreak of COVID-19. Nine inmates have died as a result of the virus at Elkton, and more than 850 have contracted it, with at least three current active cases.[1] Mr. Costner has a BMI over 30, a condition identified by the CDC as one that places him at increased risk if he is infected with COVID-19. The government agrees that Mr. Costner has no exhaustion barriers, Govt Response ECF No. 28, PageID.91 and agrees that Mr. Costner has a medical condition that rises to the level of extraordinary and compelling. *Id.* at PageID.101. The parties disagree as to whether the §3553(a) factors weigh in favor of releasing Mr. Costner. Mr. Costner believes the

---

[1] https://www.bop.gov/coronavirus/ (accessed Mar. 15, 2021)

factors weigh in favor of his release and submits the following in support thereof.

## I. Extraordinary and Compelling Circumstances Warrant Release of Mr. Costner.

Section 3582(c)(1)(A)(i) permits sentencing judges to grant a reduction of sentence, after considering the § 3553(a) factors, if "extraordinary and compelling reasons warrant such a reduction." The Sixth Circuit has set forth the process for district courts to evaluate a motion for compassionate release.

> At step one, a court must "find[]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find []" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A) (emphasis added)
>
> At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." [Dillon v. United States, 560 U.S. 817, 827 (2010).]

*United States v. Jones*, No. 20-3701, 980 F.3d 1098, 1107-08 (6th Cir. 2020). However, where the motion for compassionate release is filed by the inmate, the district court need not consider any policy statement. *United States v. Elias*, --- F.3d ---, No. 20-3654, 2021 WL 50169, *2 (6th Cir. Jan. 6, 2021). ("in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative.") The district court is free to determine what constitutes extraordinary and compelling.

2

### A. Mr. Costner has A BMI Over 30 Which Places Him at Risk

*Obesity*. Mr. Costner has a BMI of 38[2] which according to the CDC places him at risk of severe illness if infected with COVID-19.[3] The CDC has labeled obesity as a risk factor with the "strongest and most consistent evidence" for an association with severe illness from COVID-19. See CDC, Medical Conditions Evidence Table. While it initially recognized only a BMI over 40 as at high risk, based on developing research, the CDC now includes obesity with a BMI of 30 or above as part of the high risk group. Id.; CDC, COVID-19, Who Is at Increased Risk for Severe Illness?, https://perma.cc/TNN7-UJZ2.

A recent study that involved over 150,000 adults at more than 200 hospitals confirmed an association between obesity and patient outcomes among people who contract the coronavirus. *See* Body Mass Index and Risk for COVID-19–Related Hospitalization, Intensive Care Unit Admission, Invasive Mechanical Ventilation, and Death — United States, March–December 2020 at https://www.cdc.gov/mmwr/volumes/70/wr/mm7010e4.htm (accessed Mar. 15, 2021) "The findings of the study highlight the serious clinical public health implications of elevated B.M.I., and they suggest the continued need for intensive management of Covid-19 illness, especially among patients affected by severe obesity," said the lead author, Lyudmyla Kompaniyets, a health economist at the Division of Nutrition,

---

[2] Govt Sealed Exhibit at Page 0090.
[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (accessed Mar. 15, 2021).

Physical Activity and Obesity at the C.D.C. https://www.nytimes.com/2021/03/08/health/coronavirus-obesity-weight.html (accessed Mar. 15, 2021).

Several courts in the Eastern District of Michigan have found that obesity rises to the level of extraordinary and compelling. In *United States v. Culp*, No. CR 17-20737, 2020 WL 5511553, at *1 (E.D. Mich. Sept. 14, 2020), the district court granted compassionate release where the only underlying condition was obesity (BMI 33.4). The Court found that his condition qualified as an "extraordinary and compelling reason []" for release under the statute. Although the government conceded the obesity places one at a heightened risk, the Court rejected that government's routine claim that "that despite Defendant's heightened risk, the Bureau of Prisons has instituted measures to mitigate the risk of the virus spreading within its facilities". *Id. United States v. Mitchell*, No. 17-20652, 2020 WL 4284311, at *1 (E.D. Mich. July 27, 2020) (granting compassionate release where individual had BMI between 31 and 32 and housed at Danbury FCI); *see also United States v. Lewis*, 00-50054, ECF. 391, Page ID 1579 (E.D. Mich. Sept. 11, 2020) (defendant argued for compassionate release where BMI was over 45, client had already been infected and housed at FCI Lompoc and district court granted the motion). Finally, the government agrees that obesity is an extraordinary and compelling circumstance. See Govt Response, ECF No. 28, PageID.101.

### B. FCI Elkton Remains Unsafe

As the Sixth Circuit has stated, COVID-19 "is extremely contagious and conditions favor its more rapid [transmission] in detention or correctional facilities." *United States v. You*, No. 20-5390, 2020 WL 3867419, at *1 (6th Cir. Apr. 22, 2020) (order). FCI Elkton illustrates the danger, though many BOP facilities have had widespread outbreaks. Nine inmates have died of COVID-19 at Elkton. More than 800 incarcerated people have contracted the virus at the facility, and Elkton reports 3 active cases.[4]

Multiple federal courts have expressed severe disapproval of Elkton's failure to take more dramatic measures to save inmate lives. *See United States v. Brooks*, No. 07-CR-20047-JES-DGB, 2020 WL 2509107, at *6 (C.D. Ill. May 15, 2020) ("FCI Elkton has shown an inability to successfully contain the outbreak thus far."); *Wilson v. Williams*, No. 20-CV-00794, 2020 WL 1940882, at *8 (N.D. Ohio Apr. 22, 2020) ("Elkton has altogether failed to separate its inmates at least six feet apart, despite clear CDC guidance for some time that such measures are necessary to stop the spread and save lives."). In *United States v. Wahid*, No. 14-CR-00214, 2020 WL 4734409, at *2 (N.D. Ohio Aug. 14, 2020), the court granted release, even though the defendant was "not among those particularly vulnerable to the virus," because "the institution he is

---

[4] https://www.bop.gov/coronavirus/accessed Mar. 15, 2021)

incarcerated at—FCI Elkton—has been heavily affected by COVID." In *United States v. Rupert*, No. 10-40009, ECF No. 68 (C.D. Ill. May 21, 2020), the court granted release to a 42-year-old inmate with well-managed diabetes that did not require medication. The court's finding of "extraordinary and compelling" reasons for release was based "primarily" on the terrible conditions at Elkton, and the fact that the prison "has been unable or unwilling to meaningfully address the COVID-19 outbreak[.]" *Id.* at 5-6.

Several courts have granted compassionate release from FCI Elkton in light of the COVID-19 pandemic over the government's objection. Courts in this district have granted release to incarcerated people at Elkton at least twelve times. *United States v. Johnson*, No. 18-20073, 2020 WL 5630008 (E.D. Mich. Sept. 21, 2020)(Tarnow, J.) (61-year-old inmate with hypertension, latent TB, Hepatitis C, hyperlipidemia, and a BMI of 29.8); *United States v. Wren*, No. 10-20137, 2020 WL 5087978 (E.D. Mich. Aug. 28, 2020)(Michelson, J.) (43-year-old inmate with obesity, hypertension, and prediabetes); *United States v. Galka*, No. 16-20254, ECF No. 108 (E.D. Mich.) (Aug. 25, 2020) (57-year-old inmate with obesity, hypertension, and sinus problems)(Levy, J.) *United States v. Goldfein,* No. 13-20882, ECF No. 284 (E.D. Mich. Aug. 5, 2020)( inmate with diabetes and hypertension) (Levy, J.) *United States v. Dean*, No. 11-20195, 2020 WL 4251344 (E.D. Mich. July 24, 2020) (Parker, J.)  (48-year-old inmate with sleep apnea); *United States v. Bandrow*, No. 17-20077, 2020 WL 4050242 (E.D. Mich. July 20, 2020) (Inmate convicted of sex offense with asthma, epilepsy and hematuria) (Leitman, J.); *Tubbs-Smith v. United States*, No. 18-20310, 2020 WL 3618511 (E.D. Mich. July 2, 2020) (31-year-old inmate

6

with heart disease) (Tarnow, J.); *United States v. McConico*, No. 15-20267, 2020 WL 4431424 (E.D. Mich. July 31, 2020)(41-year-old inmate with obesity, diabetes, and hypertension); *United States v. Jackson*, No. 15-20507, 2020 WL 4284305 (E.D. Mich. July 27, 2020) ; *United States v. Matthews*, No. 11-20790, ECF No. 214 (E.D. Mich. July 2, 2020)( Inmate with asthma)(Friedman, J); *United States v. Goins*, No. 11-20376, 2020 WL 3064452 (E.D. Mich. June 9, 2020) (Inmate with hypertension) (Leitman, J.).

The BOP website currently indicates there are no pending tests at Elkton, even though testing is a critical tool in controlling outbreaks in congregant settings. *See* CDC, [*Mass Testing for SARS-CoV-2 in 16 Prisons and Jails — Six Jurisdictions, United States, April–May 2020*](#) (study proving that symptom-based testing in prisons and jails underestimate the number of infections); ("This disease spreads asymptomatically, which means the Court and the prison system can take no comfort in a lack of confirmed cases, and all parties should be deeply concerned by the lack of universal testing of inmates and staff." *United States v. Amarrah*, No. 17-cr-20464, 2020 WL 2220008, at *6 (E.D. Mich. May 7, 2020); *see also United States v. Al Kassar*, -- F. Supp. 3d --, 2020 WL 4813199, at *1 (S.D.N.Y. Aug. 19, 2020).

The lack of continued widespread testing at FCI Elkton highlights the risk to Mr. Costner despite the apparent drop in active cases. The risk to Mr. Costner remains particularly acute as the nation is battling with the spread of variants. In a study published March 15, 2021, the variant B.1.1.7, first detected in the UK in September 2020, has spread to multiple countries worldwide and several studies have established

that B.1.1.7 is more transmissible than preexisting variants. https://www.nature.com/articles/s41586-021-03426-1 (accessed Mar. 15, 2021).

Elkton is a low-security facility that contains dormitory-style housing and large common areas that have proven especially dangerous in the pandemic-era. As of the filing of this pleading, Mr. Costner had not been offered a vaccine for Covid-19. Due to the prison's inability to take prophylactic measures to protect the lives of those incarcerated there, courts continue to grant release to people held at Elkton. Counsel for Mr. Costner respectfully believes that Mr. Costner's medical vulnerability in combination with the pandemic and the conditions at FCI Elkton, rise to the level of extraordinary and compelling and warrant release.

## II. A Full Consideration of the §3553(a) Factors Weigh in Favor of Granting Mr. Costner's Request For Compassionate Release

When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in §3553(a) to determine whether a sentencing reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(I). Here, the danger to Mr. Costner's health as a result of his BMI, coupled with a sound release plan of home confinement for the remainder of his unserved original term of imprisonment, weighs in favor of granting Mr. Costner a compassionate release.

Admittedly, Mr. Costner committed a serious offense. He pled guilty to possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §841. Mr. Costner possessed 119.2 grams of Fentanyl. At the time of his sentencing,

8

Mr. Costner had a Criminal History score of I.  Despite the low Criminal History category, the guidelines dictated a sentencing range of 30 to 37 months. However, the Court was required to impose a mandatory minimum sentence of 60 months as a result of the quantity involved.  Although Mr. Costner has served nearly 24% of his sentence,[5] this is the longest period of time that he has ever served.  It is in fact the case that Mr. Costner had a prior conviction for Home Invasion in the 3rd degree that involved a domestic partner.   It is equally important to note that Mr. Costner completed a 26 week course in counseling, completed his probationary sentence and has not committed any additional threatening or assaultive acts.   He is eligible for home confinement October 8, 2023 (Govt Sealed Exhibit 1 at p. 101) and has a projected release date of April 6, 2024.  *Id.*  He has made the most of his time at Elkton. Significantly, he completed the 40-hour drug program.[6]

>]D]uring my time at FCI Elkton, I was not able to attend as

---

[5] **Error! Main Document Only.**Several courts in the country-including this district--have released individuals with similar percentages of time served for drug offenses as Mr. Costner.  *See  United States v. Pacely*, No. 18-CR-20283, ECF No. 52 (E.D. Mich. Oct. 29, 2020) (24 of 87 (28%) months completed when compassionate release granted for defendant convicted of cocaine and heroin offenses); *United States v. Tubbs-Smith*, No. 18-20310, ECF No. 65, 2020 WL 3618511 (E.D. Mich. July 2, 2020) (mandatory minimum sentence of 120 months imposed for drug offense where client has served 26 of 120 (22%) months when released); *United States v. Nazario*, No. 3:16-CR-186 (VLB), ECF No. 510 (D. Conn. Oct. 21, 2020) (defendant has served 7 of 24 (29%) months completed when granted release); *United States v. Rodriguez*, No. 3:17-CR-4477-BTM, ECF No. 36 (S.D. Cal., Aug. 5, 2020) (32 of 86 months  (37%) when granted compassionate release for importation of methamphetamine); *United States v. Robinson*, 2020 WL 5200929, at*1 (W.D. Mo., July 22, 2020) (21% of sentence completed where individual had completed 28 of 132 months when granted release); *United States v. Rodriguez-Acedo*, Case No. 19-cr-3539, Dkt. No. 44 (S.D. Cal. July 21, 2020) (30% sentence complete where 11 of 37 months served for methamphetamine offense when released).

[6] The government states that Mr. Costner did not participate in any drug programming.  However, Mr. Costner reports that he completed the 40-hour Drug Program and received a certificate of completion on January 28th.  The program was led by M. McDonagh, the Drug Treatment Specialist.

> many classes as i would have liked to. One of the classes that I was able to attend and complete was the 40 hour drug class. Although, it was only 40 hours, I was able to gain a lifetime of information. It showed me just how powerful addiction can be. Looking back in hindsight, I am ashamed of all the misery and pain that I caused for my own selfish gain. I know that I cannot undue the past, but I have a strong desire to right my wrongs. I believe that I can do that by becoming a law-abiding and productive citizen.

See Exhibit A – Email from Mr. Costner.

Additionally, Mr. Costner has not incurred any misconduct violations while incarcerated. The Court can, and indeed must consider post- offense developments under §3553(a) which provides the "most up-to-date picture" of the defendant's history and circumstances and "sheds light on the likelihood that [the defendant] will engage in future criminal conduct." *Pepper v. United States*, 562 U.S. 476, 490-93 (2011).

If released, Mr. Costner would reside with his parents in the Metro Detroit area and are very supportive of him. Alternatively, he is able to reside with his girlfriend who also resides in the Metro Detroit area. Additionally, Mr. Costner has two young children with whom he had regular contact prior to his incarceration. He is looking forward to having an active presence and role in their lives upon his release. With regards to employment opportunities, Mr. Costner, prior to his incarceration was a manager at a fast food restaurant. He worked at the company until he surrendered to the BOP to begin his sentence. Mr. Costner reports that he could return to the restaurant if released as well as pursue opportunities through a temporary employment

agency to assist in his reentry to the community.

The government argues that this Court's "initial balancing of the § 3553(a) factors during [the defendant's] sentencing" is presumed to "remain [] an accurate assessment as to whether those factors justify a sentence reduction" and cites *United States v. Sherwood* in support of its argument. See Govt Response ECF No. 28, PageID.102. On the contrary, Mr. Costner's current medical vulnerability–his BMI of 38–combined with the pandemic and its devastating impact at Elkton could not have been foreseen by the Court when it sentenced Mr. Elkton in October of 2019. Hence, there was no discussion at his sentencing for the need to "provide the defendant with needed . . . medical care "§3553(a)(2)(D), or to protect BOP staff and inmates from additional risk of infection, because the COVID pandemic had not taken hold in the United States.

Furthermore, the goal of imposing sufficient punishment would be satisfied by releasing Mr. Costner. He has been in custody approximately 14 months and 11 days and has served his sentence under very onerous conditions which has included lockdowns in addition to the lack of educational and vocational programing at times, suspension of visitation and the stressors of congregant living during a pandemic.

In light of Mr. Costner's positive behavior and efforts at rehabilitation, his substantial family ties and support in tandem with his release plan, counsel believes Mr. Costner is not a threat to the public. Significantly, Mr. Costner will have 4 years of supervised release to complete, and he is aware that noncompliance with the terms of

11

his supervised release will result in his reincarceration. *See United States v. Swails*, No. 04-CR-6177L, 2021 WL 191760, at *3 (W.D.N.Y. Jan. 20, 2021) (granting release to FCI Petersburg inmate, reasoning that he "was not being released into the public without there being significant supervision and control," as he would have a "term of supervised release where the Court, aided by the Probation Office, will carefully monitor Swails' behavior"); *United States v. Early*, 2020 WL 2112371, at *5 (N.D. Ill. May 4, 2020) (finding that the risk to the public "does not outweigh the risk to [Early] from contracting the coronavirus while incarcerated," particularly where "the Probation Office and the Court will be monitoring him while on supervised release and [] the Court will not hesitate to recommit him to prison should he again go astray.").

To further allay any concern that the Court might have, § 3582(c)(1)(A) authorizes it to impose an additional period of home confinement, if deemed necessary. 18 U.S.C. § 3582(c)(1)(A) (court "may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)").The continued restrictions on his freedom of movement from the home confinement condition will satisfy the goal of imposing sufficient punishment.

In sum, the Court should release Mr. Costner to his mother or girlfriend's residence in the Metro Detroit area without a 14-day quarantine at Elkton given the dire circumstances at the facility. *See United States v. Goins*, No. 11-cr-20376, 2020 WL 3064452 *19 n.2 (E.D. Mich. June 9, 2020) (declining to order a 14-day quarantine at

Elkton FCI given the circumstances at FCI Elkton and the Court's concern that quarantine at that facility would subject Goins to an unreasonable risk of COVID-19 infection).

## III.   CONCLUSION

Mr. Costner remains vulnerable if he contracts COVID-19. He respectfully requests that this Court order his immediate release and impose a term of supervised release with the condition of home confinement.

Date:  March 15, 2021                           Respectfully Submitted,

**FEDERAL COMMUNITY DEFENDER**

s/ Natasha D. Webster
Attorney for Mr. Costner
613 Abbott Street, Suite 500
Detroit, Michigan 48226
313-967-5542
E-mail: Natasha_Webster@fd.org

## CERTIFICATE OF SERVICE

Counsel certifies that on the below date, the foregoing paper was filed with the clerk of the Court using the ECF system, which will send notification to opposing counsel.

Date:  March 15, 2021	Respectfully Submitted,

**FEDERAL COMMUNITY DEFENDER**

s/ Natasha D. Webster
Attorney for Mr. Costner
613 Abbott Street, Suite 500
Detroit, Michigan 48226
313-967-5542
E-mail: Natasha_Webster@fd.org